UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IAN LYNGKLIP,

       Plaintiff,

v.

CREDIT CARD SERVICES, JOSH DOE,
EDUCARE CENTER SERVICES, EDUCATION
MENTORING LLC, TAKEDOWN CONSULTING
INC., ROSEMARY K. WANLASS, GUY G.
GRITTON, and JONATHON GATES,

       Defendants.

Case Number 17-12343
Honorable David M. Lawson

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL, DISMISSING CASE WITHOUT PREJUDICE AGAINST CERTAIN DEFENDANTS, AND DISMISSING AS MOOT DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT**

    Plaintiff Ian Lyngklip, an active consumers' rights attorney, has filed this case in his own name against several defendants for violating the federal Telephone Consumer Protection Act and its state law analog. Defendants Education Mentoring, Takedown Consulting, Rosemary K. Wanlass, and Guy G. Gritton responded with a motion to dismiss or for summary judgment, and followed that with a threatened motion for sanctions under Federal Rule of Civil Procedure 11. That apparently provoked the plaintiff's motion to voluntarily dismiss those defendants without prejudice. Those defendants oppose that motion, insisting that their motion to dismiss be decided and the case be dismissed *with* prejudice. They also want the plaintiff to pay their costs and attorney's fees, which amount to nearly $9,000.

    There is one thing the parties agree on: these defendants should be dismissed from the case, at least for now. The defendants insist that the plaintiff's dismissal request should come at a price,

because his actions have cost them dearly. But the account of the interactions between the plaintiff's attorney and the defendants' lawyer, set out below, shows that the plaintiff has acted quite reasonably; the authors of the bloated bill for attorney's fees are the defendants themselves, or perhaps their own attorney. The plaintiff may have the dismissal he seeks, and the defendants' requests for fees and costs will be denied. The defendants' motions to dismiss are moot.

I.

According to the amended complaint, on several occasions between 2015 and July 2017, Lyngklip received automatically-dialed calls from "Credit Card Services," a financial consulting service owned by Educare Center Services. The calls came to his personal cell phone from several phone numbers that disguised Credit Card Services's source phone number. Those calls conveyed a pre-recorded message about credit card rate reduction. Lyngklip answered some of those calls and spoke with agents at Credit Card Services in an apparent attempt to obtain information on the company and its operations.

At some point during the time frame alleged, defendant Jonathon Gates, a senior financial advisor at Credit Card Services, provided the plaintiff with his department phone number: 866-456-1676. That phone number is associated with defendant Education Mentoring LLC, of which defendant Takedown Consulting, Inc. is a member. Defendant Rosemary Wanlass is the registered agent, member, and incorporator of Education Mentoring LLC, and defendant Guy Gritton is the registered agent, officer, incorporator, and director of Takedown Consulting. Other than alleging that Educare Center Services directs consumers to call phone number 866-456-1676 to speak to a senior financial advisor and that 866-456-1676 is the phone number for Education Mentoring LLC,

there are no allegations in the amended complaint that directly pertain to defendants Education Mentoring LLC, Takedown Consulting, Inc., Wanlass, or Gritton.

Lyngklip apparently conducted basic internet searches to link Education Mentoring to the 866-456-1676 number. The plaintiff's attorney, Sylvia Bolos, explained in her declaration that the Better Business Bureau website listed that number under Education Mentoring LLC's contact information. She also learned that the number was "active" and maintained by service provider VOIP Innovations. Bolos stated that she could not obtain information for VOIP without a subpoena.

Attorney Marc Jerabek filed an appearance for defendants Education Mentoring, Takedown Consulting, Wanlass, and Gritton on November 1, 2017; the plaintiff agreed with him the next day to enlarge their response time. On November 7, 2017, Jerabek sent Bolos an email requesting that the plaintiff voluntarily dismiss the case against his clients with prejudice based on the absence of any factual allegations directed at them. The email noted that Jerabek was prepared to have his clients sign an affidavit that stated, among other information, that those defendants have not used the suspect phone number since Education Mentoring ceased business operations in 2014. Jerabek sent a follow-up email on November 12, asking if the plaintiff had any facts to support his claims against Jerabek's clients, and if not, requesting that the complaint be dismissed promptly.

On November 13, Bolos responded that she would discuss the defendants' request with her client. She also asked if the defendants would sign a declaration and produce documents showing that they dissolved Education Mentoring and Takedown Consulting. Jerabek confirmed that his clients would sign such an affidavit, but he was not sure that any documentation of the dissolution existed. On November 15, Jerabek stated in an email that his clients were unsure whether the businesses were formally dissolved, and that it was possible that they merely did not pursue renewal

of their registrations with the state. Jerabek once again asked Bolos whether Lyngklip would dismiss his clients based on an affidavit alone. The email indicated that the defendants would move forward with a motion under Rule 11.

On November 28, Bolos responded via email to Jerabek, seeking any documentation of ceased operations that might verify the defendants' forthcoming affidavit. Bolos asked if the defendants had account closing documents from the telephone carrier to support their position that they have not used the phone number since 2014. In the event the defendants did not possess such documentation, Bolos requested a stipulation to subpoena records from the telephone carrier. In his reply email, Jerabek questioned the need for discovery, since no allegations in the complaint contradicted the defendants' position or applied to the defendants. He explained that his clients would not consent to discovery outside of the normal course in a federal suit.

Apparently frustrated, Bolos reiterated her request for a stipulation to subpoena the telephone carrier's records, since the defendants were reluctant to furnish corporate dissolution paperwork or other documents that support their position. She noted that this solution should be appealing to the defendants, as the plaintiff would be doing the work to prove their defense. Bolos stated, "I'm willing to run this down, but I need more . . . . [W]hat support do your clients have?" She also asked for any suggestions that would allow both attorneys to meet their duties to their respective clients. That same day, the defendants sent Bolos their affidavit, which disclaimed their association with the subject telephone number and any of Credit Card Services's operations. The affidavit stated that Education Mentoring ceased business operations on March 24, 2014, and Takedown Consulting's registration with the State of Utah expired on June 27, 2013. It also noted that the defendants did

not know who gained control of the phone number after they ceased operations. The affidavit did not include any supporting documentation.

The attorneys apparently held a telephone conference on November 29. In an email memorializing their call, Bolos stated that she believed the amended complaint sufficiently alleged all elements of the federal and state claims, and sought Jerabek's feedback so that the plaintiff could file an amended pleading if necessary. Bolos also explained that she could not ethically recommend that her client dismiss the complaint against the defendants based on the affidavit alone. She noted that she did not want the defendants to incur further expenses defending this suit if they in fact were not proper parties, and suggested that in the time the defendants had to file a responsive pleading, the defendants should either stipulate to a subpoena to the telephone carrier, at the plaintiff's expense, or produce documents that establish the date on which the defendants terminated their account with the telephone carrier.

Sometime thereafter, the attorneys agreed to draft a joint status report. On December 14 — a week after the defendants' responsive pleading was due — Jerabek emailed his revisions to their status report and represented that he would file it the next day. The email also stated that his clients were in the process of seeking documents from the telephone company. Bolos subsequently gave her consent to file the report. But instead, on December 15, the defendants filed their motion to dismiss and for summary judgment.

On December 21, Jerabek's secretary electronically served on Bolos the defendants' motion for sanctions under Rule 11. The motion was not filed with the Court.

On January 4, 2018, Bolos emailed Jerabek a proposed stipulated order of dismissal, which she believed would dismiss his clients from the lawsuit, moot their motion to dismiss, and moot their

proposed motion for sanctions. Jerabek evidently did not respond, prompting a follow-up email from Bolos on January 5 with the same proposal. Jerabek responded to that email, explaining that he had not heard from his clients, but presumed that they would not agree to dismissal without prejudice and without attorney's fees. Bolos replied that dismissal without prejudice at this stage of the proceedings is common practice, and that by suggesting several ways of verifying that the defendants are no longer associated with the subject phone number, the plaintiff had attempted to mitigate any unnecessary expenses incurred by the defendants. Bolos also noted that if Jerabek's clients would not heed his advice, she would move for voluntary dismissal.

Jerabek dug in his heels. He noted that he normally would agree that dismissal would be the appropriate resolution of their issue if the plaintiff had offered dismissal in early November or after receiving the defendants' affidavit. However, he contended that by keeping his clients in the case, the plaintiff "forced" the defendants to file a motion to dismiss and draft a motion for sanctions, costing them thousands of dollars in attorney's fees. Jerabek expressed concern about recommending that his clients accept dismissal without prejudice and without fees in the absence of any guarantee that they would not be added back to the suit at a later time.

Jerabek informed Bolos that after speaking with his clients — presumably later on January 5 — he learned that they would have considered such a stipulation earlier in the proceedings, but could not agree to the relief requested now that they had incurred significant legal expenses. Instead, the defendants would agree to dismissal only with prejudice and a negotiated amount of attorney's fees. If the dismissal was without prejudice, Jerabek declared, his clients would expect all of their attorney's fees to be paid.

The parties evidently did not agree on the terms of a dismissal, and the plaintiff filed his motion for voluntary dismissal without prejudice on January 5, 2018.

II.

A plaintiff may dismiss his case on his own before a defendant becomes involved in the lawsuit. Fed. R. Civ. P. 41(a)(1)(A)(i). But once a defendant files an answer or a motion for summary judgment, the plaintiff may dismiss his case only by court order, and only "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

Defendants Education Mentoring, Takedown Consulting, Wanlass, and Gritton certainly want out of this lawsuit, but they are not content to let the plaintiff simply walk away. They insist that the "proper" terms of a court-ordered dismissal must include a "with prejudice" designation, and a hefty payment of costs, which include Marc Jerabek's attorney's fees.

A.

Addressing the first condition, a court has the discretion to grant the motion if the defendant would not suffer "'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (quoting *Cone v. W. Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). When assessing potential prejudice, courts generally will consider the "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.* at 718 (citing *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988)). These factors are merely a guide, and the plaintiff need not prevail on all of them; nor is the district court required to make any findings on the sufficiency of the plaintiff's

explanation for dismissal. *Rosenthal v. Bridgestone/Firestone,* 217 F. App'x 498, 502 (6th Cir. 2007) (citing *Kovalic*, 855 F.2d at 474 (quotation marks omitted)).

Taken literally, the first factor favors the plaintiff, since the defendants incurred *no* expenses "prepar[ing] for trial." The expenses all were incurred determining whether the defendants belonged in the case to begin with. And although it was the plaintiff who sued them, the course of fee generation for the defendants cannot all be laid at Lyngklip's feet.

Plaintiff Lyngklip, presumably irritated by repeated and unsolicited calls placed to his cell phone from a credit adjustment vendor, tracked the source of the offending solicitations to a phone number associated with these defendants and sued them. Attorney Jerabek's clients apparently never denied that association, but instead contended that the information was stale, and they *no longer* used that phone number in their business. Lyngklip's attorney, Sylvia Bolos, declined to accept that assertion at face value and looked for a way to confirm it independently, suggesting several alternatives. That trust-but-verify approach was entirely reasonable under the circumstances. And when the defendants could not — or would not — produce supporting documentation, Bolos offered to use formal discovery tools to find it herself. It was in the midst of that conversation that Jerabek apparently decided that confrontation was the better option and he churned up his summary judgment motion.

A court's primary consideration in ruling on a motion for voluntary dismissal under Rule 41(a)(2) motion is to protect the nonmoving party from unfair treatment. *Grover*, 33 F.3d at 718. When a defendant claims unfairness over the expense of defending the lawsuit, it is useful to look into why the expense was incurred. Attorney Jerabek filed a declaration attesting that $8,858 in fees and costs were incurred for the 29.5 hours and 3.2 hours he and his associate respectively expended

in defense of this case. It is not clear, however, that "much of this effort was directed at matters that [advanced] either discovery or the litigation as a whole." *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 407 (6th Cir. 2017). Here, the defendants' refusal of reasonable requests to verify their assertions — even to the point of declining the plaintiff's proposal to issue a third-party subpoena before the Rule 16 conference for documents that could solidify the defense — could "fairly be seen as holding up the progression of discovery." *Id.* at 408. And they have not explained why, in the midst of those discussions, their aggressive motion practice was necessary. These efforts and expenses do not weigh in favor of a dismissal "with prejudice."

There has not been any delay or lack of diligence in prosecuting the case by the plaintiff, and so the second *Grover* factor favors dismissal without prejudice. Lyngklip filed his amended complaint on September 1, 2017, and the parties agreed to extend the defendants' time to answer the complaint to December 7. The defendants took the position in early November that the amended complaint lacked sufficient factual allegations regarding their liability, which prompted attorney Jerabek to request that the plaintiff voluntarily dismiss his clients. The string of emails that followed indicate that from the onset, the plaintiff was willing to dismiss the defendants provided they produce some documentation that supported their position — a reasonable compromise under the circumstances. Any prospect of a swift resolution was thwarted by the defendants' insistence that an affidavit was sufficient to support dismissal and their refusal to agree to limited discovery. Even if the plaintiff's actions could be fairly characterized as a lack of diligence, "much of that delay was premised on [the defendants'] litigation tactics." *Malibu*, 705 F. App'x at 408. Moreover, the plaintiff filed his motion for voluntary dismissal on January 5, 2018, less than two months after the parties began discussing dismissal and less than six months after the amended complaint was filed.

*See Ball v. Perkins*, No. 17-11212, 2018 WL 636246, at *2-3 (E.D. Mich. Jan. 31, 2018) (collecting cases where the dismissal occurred a year or more after the lawsuit was initiated and finding that "the lawsuit had not progressed substantially" where "discovery ha[d] not commenced, a scheduling order ha[d] not been entered, and a trial date ha[d] not been set.").

Next, the plaintiff's explanation for dismissal is well-taken in light of the defendants' intent to pursue Rule 11 sanctions. The plaintiff represents that he sought a stipulation from the defendants for dismissal without prejudice within 21 days of service of their Rule 11 letter and motion. The plaintiff explains that he availed himself of Rule 11's "safe harbor" by agreeing to withdraw the complaint against the defendants, but the defendants refused to consent to dismissal unless it was with prejudice, or at least with fees and costs. Considering that "the purpose of this [safe harbor] provision is to allow a party or counsel to avoid sanctions by withdrawing the challenged claims or his representation," *Barker v. Bank One, Lexington, N.A.*, 1998 WL 466437, at *2 (6th Cir. 1998) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997)), the plaintiff's explanation for the need to take dismissal is satisfactory.

Finally, the defendants do not make much of their filing of a motion to dismiss or for summary judgment. Despite the motion's title, it is more fairly construed solely as a motion to dismiss based on the arguments presented. The motion essentially highlights pleading deficiencies in the complaint under the *Twombly-Iqbal* line of cases and argues that the Court lacks personal jurisdiction over the defendants. It only briefly urges the Court to dismiss the complaint under Rule 56 based on the affidavit it submitted to the plaintiff and the lack of other evidence of liability. Otherwise, it does not discuss the evidence (there was no discovery in the case yet), and it will not forestall a dismissal without prejudice. *See Wilkes v. JP Morgan Chase Bank, N.A.*, No. 10-14236,

2011 WL 4840980, at *5 (E.D. Mich. Oct. 11, 2011) ("The defendant's motion can only be characterized properly as a motion to dismiss. Such a motion will not prevent a plaintiff from voluntarily dismissing his claim without prejudice under Rule 41(a)(1)(A)(i).") (citing *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 578 (6th Cir. 2010)); *see also Rosenthal*, 217 F. App'x at 502 (observing that "the existence of a pending motion for summary judgment is a factor that should be considered, but its existence does not mandate a finding of plain legal prejudice").

The plaintiff's dismissal of these defendants may fairly be entered "without prejudice."

B.

Defendants Education Mentoring, Takedown Consulting, Wanlass, and Gritton also demand payment of costs, including attorney's fees, as a condition of a dismissal under Rule 41(a)(2). They believe they are entitled to payment of those costs and fees under three theories: *First*, they argue that sanctions are appropriate under Rule 11 because the plaintiff and his counsel were provided numerous opportunities to dismiss the case against the defendants as early as November 2017, after learning that the defendants were not proper parties to the suit. *Second*, they argue that sanctions are warranted under 28 U.S.C. § 1927, because the plaintiff vexatiously multiplied the proceedings when he "refused" to accept the defendants' affidavit, which "forced" the defendants to file a motion to dismiss or for summary judgment, incurring thousands of dollars in legal fees. *Third*, the defendants contend that sanctions are appropriate under the Court's inherent powers to sanction. None of these arguments is persuasive.

1.

Federal Rule of Civil Procedure 11 does not furnish grounds for sanctions in favor of these defendants for a few reasons. For one, the defendants' request for sanctions under Rule 11 is not

-11-

properly before the Court. The defendants included their request in their response brief to the plaintiff's motion for voluntary dismissal, instead of in a separate filing. Although the defendants apparently served their Rule 11 motion on the plaintiff on December 21, 2017, they never filed the motion with the Court.

A party seeking Rule 11 sanctions must comply with several procedural prerequisites. The rule states that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). *See Carey v. Hall*, No. 12-14777, 2013 WL 174503, *at 1 (E.D. Mich. Jan. 3, 2013) (denying defendants' request for sanctions because it was included in their motion for partial summary judgment). Rule 11's procedural requirements are "specific and exacting." *Tillman v. Apostolopoulos*, No. 10-12253, 2010 WL 5088763, at *1 (E.D. Mich. Dec. 8, 2010). Its "safe harbor" language mandates service of the motion at least 21 days before it is filed, to give the target of the motion a chance to withdraw the offending paper. Fed. R. Civ. P. 11(c)(2). It is a procedure that is "unquestionably explicit" and an "absolute requirement" for seeking sanctions under Rule 11. *Ridder v. City of Southfield*, 109 F.3d 288, 296 (6th Cir. 1997). "A failure to follow this rigid procedure is fatal to a request for sanctions under Rule 11." *Tillman*, 2010 WL 5088763, at *1.

Furthermore, even if the motion complied with the rule's procedural requirements, the plaintiff has availed himself of Rule 11's safe harbor by filing the motion for voluntary dismissal. *See Nagle Industries Inc. v. Ford Motor Co.*, 173 F.R.D. 448, 459 (E.D. Mich. 1997) (concluding that the plaintiff's motion to voluntarily dismiss its claims after the defendant objected to dismissal without prejudice "satisfi[ed] Rule 11(c)(1)(A)'s requirement that the challenged claim be 'withdrawn or appropriately corrected' . . . [entitling the plaintiff] to protection from Rule 11 sanctions under that rule's safe harbor provisions.").

And finally, the defendants have not established a Rule 11 violation. Under Rule 11, when an attorney signs a pleading or motion, he certifies that the assertions in that paper "are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). In the Sixth Circuit, "the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was 'reasonable under the circumstances.'" *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)). "[B]efore an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading." *Bodenhamer Bldg. Corp. v. Architectural Res. Corp.*, 989 F.2d 213, 218 (6th Cir. 1993). As noted above, Lyngklip's investigation provided him with a reasonable basis to make the allegations in the amended complaint. Subsequent developments may have shed more light on the situation, but that did not change the reality that "the factual contentions [had some] evidentiary support" when the pleading was signed, or suggest that the papers were filed for an "improper purpose." *See* Fed. R. Civ. P. 11(b)(1), (3).

2.

The defendants have not shown that sanctions ought to be awarded under 28 U.S.C. § 1927. Section 1927 empowers the Court to award attorney's fees, costs, and expenses against "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. But that requires the Court to find that the "attorney kn[e]w[] or reasonably should [have known] that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). The bar is a high

one. "'There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). No facts support such a finding here.

The defendants maintain that the plaintiff's actions forced them to file a motion to dismiss and serve a motion for sanctions, thereby multiplying the proceedings. However, at the time the defendants pursued their motions, it was not indisputably clear that the plaintiff's claims against them were frivolous. The defendants had yet to produce any supporting documentation other than their affidavit, even after the plaintiff offered to serve a subpoena on the telephone carrier. That allowance may well have obviated any need for the defendants' motion practice. Moreover, as *Nagle* demonstrates, it is not uncommon for parties to engage in this kind of motion practice before a complaint is dismissed under Rule 41(a)(2). *See Nagle*, 173 F.R.D at 459.

It has been said that the primary goal of 28 U.S.C. § 1927 is deterrence and punishment. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). There is no cause for any of that on this record.

3.

The defendants' argument for sanctions under the Court's inherent authority is similarly unsupported by the record in this case. The defendants have fallen far short of demonstrating the bad faith by the plaintiff or his attorney that this Court has found necessary in earlier writings. *See Armstrong v. Comm'r of Social Security*, 95 F. Supp. 3d 1049, 1052-53 (E.D. Mich. 2015) (citing cases). The Sixth Circuit has held that before a court may engage its inherent power as the authority

for imposing sanctions against an attorney for his or her filings, it must find "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).

Applying that test here, nothing in the record suggests that plaintiff's attorney knew or should have known that the claims against the defendants were meritless at the time of filing. Attorney Bolos stated in her declaration that her internet search led her to believe that the defendants operated the phone number from which the offending calls originated. Her preliminary investigation connected the defendants to the phone number, thereby providing some factual basis for including them in the amended complaint. Even assuming that Bolos should have known that the defendants no longer operated their business or the subject phone number, there is no evidence of an improper purpose such as harassment. If anything, the emails exchanged between Bolos and Jerabek suggest that the plaintiff was willing to dismiss the defendants if they provided some documentation that supported their position. That conduct "do[es] not fall within the narrowly-defined circumstances justifying invocation of the Court's inherent powers." *United States v. Marion L. Kincaid Trust*, 463 F. Supp. 2d 680, 698 (E.D. Mich. 2006).

4.

Finally, the Court may require payment of costs or attorney's fees upon dismissal of a case under Rule 41 if appropriate. *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965). And occasionally, "without prejudice" dismissals are accompanied by an award of costs. *Ibid.* But "no circuit court

has held that such costs are mandatory." *DWG Corp. v. Granada Investments, Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992).

In determining whether payment of costs or fees should be a condition of dismissal without prejudice, courts generally consider: "(1) whether the plaintiff acted in good faith in bringing and prosecuting the litigation; (2) whether the defendant incurred substantial expenses in defending the action; (3) whether the plaintiff delayed in bringing the motion to dismiss; and (4) whether the work performed can be used in a subsequently filed action." *Matthews v. General RV Center, Inc.*, 2017 WL 411354, at *1 (E.D. Mich. Jan. 31, 2017) (citations omitted). As discussed in section A, above, these factors, except the last, favor the plaintiff. It is unlikely that the work attorney Jerabek put in this case will serve his clients at a later time. But as should be apparent by now, most of that work could have been avoided by prudent litigation practice. Certainly, the defendants had a right to aggressively pursue a dismissal of the case against them. But choosing that course, when another option was available, places the responsibility for the costs of that choice squarely upon them, where the American Rule assigns it. *See Michigan Flyer, LLC v. Wayne Cty. Airport Auth.*, 162 F. Supp. 3d 584, 586-87 (E.D. Mich. 2016), *aff'd*, 860 F.3d 425 (6th Cir. 2017) (noting that the "American Rule" "usually governs litigation in the United States," and requires that "'litigants must pay their own attorney's fees'") (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978)).

III.

The plaintiff's filings against defendants Education Mentoring, Takedown Consulting, Wanlass, and Gritton were proper and his litigation conduct was reasonable. For the reasons discussed above, the "proper" "terms" of the case against these defendants include a "without prejudice" designation (which will allow the plaintiff to bring them back into the case if the

discovery he seeks — and which the defendants denied — show that they in fact are connected to the offending phone calls) and no award of costs or expenses.

Accordingly, it is **ORDERED** that the plaintiff's motion for voluntary dismissal of defendants Education Mentoring, Takedown Consulting, Wanlass, and Gritton [dkt. #15] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITHOUT PREJUDICE** against defendants Education Mentoring LLC, Takedown Consulting Inc., Rosemary K. Wanlass, and Guy G. Gritton **ONLY**.

It is further **ORDERED** that the defendants' motions to dismiss or for summary judgment [dkt. #13, 14] are **DISMISSED as moot**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: May 1, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 1, 2018.

s/Susan Pinkowski  
SUSAN PINKOWSKI